Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---------------------------------
IN RE:                                          )   CASE NO.        04-30114 (LMW)
                                                )
  PAUL M. MURRAY,                              )   CHAPTER         7
                                                )
       DEBTOR.                                )
---------------------------------
ROBERTA NAPOLITANO, TRUSTEE,                    )   ADV. PRO. NO.   04-3189
                                                )
       PLAINTIFF                              )   DOC. I.D. NO.   1
                                                )
  vs.                                           )
                                                )
PAUL M. MURRAY,                                 )
                                                )
       DEFENDANT.                             )
---------------------------------

## APPEARANCES

Roberta Napolitano, Esq.            Chapter 7 Trustee and *Pro Se* Plaintiff
P. O. Box 9177
Bridgeport, CT 06601


Paul M. Murray                      Debtor and *Pro Se* Defendant
639 Third Avenue
West Haven, CT 06516

**BRIEF MEMORANDUM OF DECISION RE:**
**COMPLAINT OBJECTING TO DISCHARGE**

Lorraine Murphy Weil, United States Bankruptcy Judge


    **WHEREAS,** the above-referenced debtor (the "Debtor") commenced this case by a chapter 7

petition (the "Petition") filed on January 9, 2004;

**WHEREAS,** on the original Petition, the Debtor listed his residence as 370 Stevenson Road, New Haven, Connecticut (the "Residence");

**WHEREAS,** the above-referenced plaintiff is the appointed and duly serving chapter 7 trustee (the "Trustee") in this case;

**WHEREAS,** that certain Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines (Case Doc. I.D. No. 3)[1] set April 5, 2004 as the bar date (the "Bar Date") by which complaints objecting to the Debtor's discharge could be timely filed and set February 3, 2004 as the date for the meeting of creditors pursuant to Bankruptcy Code § 341 (the "Meeting").[2] The Bar Date subsequently was extended to December 31, 2004 by orders of the court (*see, e.g.*, Case Doc. I.D. Nos. 31, 35);

**WHEREAS,** on December 30, 2004, the Trustee commenced the instant adversary proceeding by the filing of a complaint (A.P. Doc. I.D. No. 1, the "Complaint") objecting to the discharge of the Debtor pursuant to 11 U.S.C. § 727(a)(4)(A);[3]

---

[1] References herein to the docket of the chapter 7 case appear in the following form: "Case Doc. I.D. No. ____." References herein to the docket of this adversary proceeding appear in the following form: "A.P. Doc. I.D. No. ___." Reference herein to the record of the December 18, 2006 trial (the "Trial") appears in the following form: "Oral Record at ___:___:___".

[2] References herein to title 11 or to the Bankruptcy Code refer to the same as they existed prior to amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. References herein to the transcript of the Meeting in the chapter 7 case appear in the following form: "Meeting Transcript at ____".

[3] The Complaint also alleged a cause of action under Bankruptcy Code § 727(a)(2)(B) against the Debtor. (*See* Complaint at 3.) At Trial, the Trustee stated that she would not proceed on that cause of action. (*See* Oral Record at 10:37:53 – 10:38:04.)

**WHEREAS,** on January 24, 2005, the Debtor filed a certain letter (A.P. Doc. I.D. No. 6) which the Memorandum (as defined hereafter) deemed to be a timely-filed answer (the "Answer"). The Answer denied the allegations of the Complaint;

**WHEREAS,** subsequently, the court issued that certain Brief Memorandum and Order (A.P. Doc. I.D. No. 31, the "Memorandum") upon the Trustee's motion for default judgment (A.P. Doc. I.D. No. 28). The court assumes familiarity with the Memorandum. The court determined that based on the "severe consequences" of a denial of discharge, the allegations of the Answer and due to a procedural irregularity, the Trustee's motion for default judgment should be denied. (*See* Memorandum.) The court instructed the Trustee to file and serve a revised pretrial order to "give the Debtor a final chance to proceed on the merits." (*Id.* at 4.);

**WHEREAS,** on June 2, 2006, an amended pretrial order (A.P. Doc. I.D. No. 35) issued which scheduled a trial on the merits for September 18, 2006. A copy of that pretrial order was mailed to the Debtor. (*See* A.P. Doc. I.D. No. 36.) The pretrial order further was amended on October 11, 2006 (*see* A.P. Doc. I.D. No. 41) and trial was rescheduled to December 11, 2002. A copy of that pretrial order was served on the Debtor. (*See* A.P. Doc. I.D. No. 42.) Trial subsequently was rescheduled further to December 18, 2006. (*See* A.P. 11/28/06 Docket Entry.);[4]

**WHEREAS,** the Debtor did not appear at the Trial. (*See* Oral Record at 10:28:32 *et seq.*) The Trustee stated at the Trial that mail sent to all of the addresses listed for the Debtor in the bankruptcy case (including the Third Avenue address above) has been returned as undeliverable. However, it is the Debtor's responsibility to maintain a current mailing address on file with the court at all times

---

[4] The court notes that notice of the December 18, 2006 Trial date was not sent to the Debtor. However, had the Debtor appeared at the December 11, 2006 date, he would have been made aware of the new Trial date.

during the pendency of the chapter 7 case. *See Williams v. Faulkner*, No. 95-CV-741, 1998 WL 278288, at *2 (N.D.N.Y. May 20, 1998);

**WHEREAS,** the only testimony at the Trial was the Trustee's and she introduced documentary evidence into the record.[5] The matter is now ripe for decision;

**WHEREAS,** this court has jurisdiction over this adversary proceeding as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of the District Court (Daly, C.J.);[6]

**WHEREAS,** evidence from the Trial established the following facts:

- The Debtor and Abigail Berglass were married in or about 2000. (Meeting Transcript at 6-7.) Ms. Berglass is not a debtor in this court.

- The Debtor and Ms. Berglass held joint title to property known as 453 Ocean Avenue, West Haven, Connecticut (the "West Haven Property").

- On or about April 26, 2002, the Debtor and Ms. Berglass sold the West Haven Property for the sum of $381,000.00. (*See* Trial Exh. B, Warranty Deed.) The warranty deed was signed by the Debtor and Ms. Berglass. (*See id.*)

- As a result of the sale, the Debtor and Ms. Berglass collectively received net sale proceeds of $160,094.26. (*See* Trial Exh. C, Sellers' Closing Statement.) The sellers' closing statement was signed by the Debtor and Ms. Berglass and there is no evidence that the Debtor was not entitled to a one-half share of the net sale proceeds. (*See id.*)

---

[5] References to those exhibits appear in the following form: "Trial Exh. ___."

[6] That order referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings arising under Title 11, U.S.C., or arising in or related to a case under Title 11, U.S.C. . . . ."

- On or about April 27, 2002, Ms. Berglass purchased the Residence for the sum of $265,000.00. (*See* Trial Exh. D, Warranty Deed.) For the purchase of the Residence, Ms. Berglass paid a cash down payment (the "Down Payment") of $119,621.73.[7] (*See* Trial Exh. E, Settlement Statement).

- Ms. Berglass obtained a mortgage (the "Mortgage") on the Residence. (*See* Trial Exh. F, Open-End Mortgage). The Mortgage was "made and executed between ABIGAIL BERGLASS, JOINED HEREIN PRO-FORMA BY HER SPOUSE PAUL M MURRAY JR . . . and Bank One, N.A." on October 4, 2002. (*Id*. at 1.) Both Ms. Berglass and the Debtor signed the Mortgage. (*See id.*);

**WHEREAS,** the Debtor testified at the Meeting in relevant part as follows:

| | |
|---|---|
| THE TRUSTEE: | Did you transfer property out of your name in the four years before you filed bankruptcy? |
| THE DEBTOR: | No. |
| | . . . |
| THE TRUSTEE: | Have you ever owned any real property, such as a house, building or condominium? |
| THE DEBTOR: | I've owned several houses in the past. |
| THE TRUSTEE: | When was the last time you owned a house? |
| THE DEBTOR: | 1999. I think it was 2000. |
| THE TRUSTEE: | Okay. What happened to it? |
| THE DEBTOR: | It was sold through a divorce. |
| THE TRUSTEE: | Okay. Does your ex-wife owe you any money as a result of the divorce? |

---

[7] On August 30, 2004, the Trustee commenced an adversary proceeding (A.P. No. 04-3129) against the Debtor and Ms. Berglass. In that action, the Trustee alleged that the Debtor fraudulently conveyed some or all of his portion of the proceeds from the sale of the West Haven Property to Ms. Berglass in order for her to purchase the Residence. The Trustee sought to avoid that transfer pursuant to 11 U.S.C. § 544 and Conn. Gen. Stat. §§ 52-552 *et seq*. On May 19, 2005, a stipulated order (A.P. No. 04-3129 Doc. I.D. No. 46) entered which granted an attachment to the Trustee against the Residence for $80,047.13 and permitted the sale of the Residence subject to that attachment. Thereafter, the court granted a motion to compromise the adversary proceeding for $30,000.00 in full settlement of the Trustee's claim(s) against Ms. Berglass. (*See* A.P. No. 04-3129 Doc. I.D. No. 55.)

| | |
|---|---|
| THE DEBTOR: | No. |
| THE TRUSTEE: | Did you make any profit on the sale of the property? |
| THE DEBTOR: | No. |
| THE TRUSTEE: | Who owns the place where you live now? |
| THE DEBTOR: | My wife. |
| THE TRUSTEE: | How long have you been married? |
| THE DEBTOR: | Four years. Approximately four years. |
| THE TRUSTEE: | How long has she owned the house? |
| THE DEBTOR: | Two-plus years. |
| THE TRUSTEE: | What was the source of the down payment? |
| THE DEBTOR: | Basically, the sale of her condo. |
| | . . . |
| THE TRUSTEE: | Did you own an interest in that condominium? |
| THE DEBTOR: | No. |
| THE TRUSTEE: | Have you ever owned an interest in this house? |
| THE DEBTOR: | No. |
| THE TRUSTEE: | The house in which you live now? |
| THE DEBTOR: | No, I don't. |
| THE TRUSTEE: | Did you sign the mortgage on the house? |
| THE DEBTOR: | No. |
| THE TRUSTEE: | Did you contribute to the down payment at all? |
| THE DEBTOR: | No. |

(Meeting Transcript at 4:6 – 8:5.);

**WHEREAS,** Bankruptcy Code § 727(a)(4)(A) provides for the denial of discharge if a debtor "knowingly and fraudulently, in or in connection with the case– . . . made a false oath or account . . ., 11 U.S.C. § 727(a) (West 2006);

**WHEREAS,** Bankruptcy Code § 727(a) "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996) (internal quotation marks omitted). However, "the relief of a bankruptcy discharge is not an absolute right, but rather, a privilege accorded honest debtors who provide full and honest disclosure to creditors and otherwise satisfy bankruptcy statutory obligations."*Casa Investments Co. v. Brenes (In re Brenes)*, 261 B.R. 322, 329 (Bankr. D. Conn. 2001) (Dabrowski, J.);

**WHEREAS,** in order to deny discharge under Section 727(a)(4)(A), the Trustee must establish by a preponderance of the evidence that: (1) the debtor made the statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the statement was made with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Brenes*, 261 B.R. at 334. Statements made by a debtor at a Bankruptcy Code § 341 meeting fall within the purview of Section 727(a)(4)(A) as statements made under oath. *In re Brenes*, 261 B.R. at 334. *See also Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 158 (Bankr. N.D. Ohio 1998). Once the party objecting to discharge provides persuasive evidence of a false statement, the burden of production shifts to the debtor credibly to explain the reason for the false statement. *In re Brenes*, 262 B.R. at 334;

**WHEREAS,** the Trustee alleges, *inter alia*, that the Debtor "knowingly and fraudulently" testified falsely at the Meeting that he did not contribute to the Down Payment. The court concludes that the Trustee has made out a *prima facie* case herein;

**WHEREAS,** the Trial exhibits establish that the Debtor and Ms. Berglass sold the West Haven Property and received net proceeds in excess of $160,000.00, one-half of which was the property of the Debtor. The next day, Ms. Berglass purchased the Residence and made the Down Payment, which was more than one-half of the sale proceeds. Given the almost contemporaneous nature of the two sales, it is a fair inference that some or all of the Debtor's portion of the proceeds was included in the Down Payment. Accordingly, the Debtor testified falsely that he did not contribute to the Down Payment;

**WHEREAS,** the Debtor also testified at the Meeting that the last house he "owned" was sold through a divorce in 1999 or 2000. That statement was false because, as discussed above, title to the West Haven Property subsequently was held jointly with his then-current wife;

- 7 -

**WHEREAS,** the court finds and/or concludes that the above-referenced false statements were material to this case;

**WHEREAS,** the Trustee having made out her *prima facie* case, the burden switched to the Debtor to offer an explanation at the Trial as to his false statements and, as noted, the Debtor did not appear at Trial. Accordingly, the court concludes that the Debtor "knowingly and fraudulently . . . made a false oath [in connection with this case]" within the purview of Bankruptcy Code § 727(a)(4)(A);[8]

**NOW, THEREFORE**, it is hereby **ORDERED** that a judgment will enter denying a discharge to the Debtor.

Dated: March 7, 2007                                    BY THE COURT

*Lorraine Murphy Weil*
**Lorraine Murphy Weil**
**United States Bankruptcy Judge**

---

[8] In light of the above determination, it is unnecessary for the court to address other alleged false statements made by the Debtor at the Meeting.